# STEVEN L. BROUNSTEIN PLLC
*Attorney at Law*

42-40 Bell Boulevard
Bayside, New York 11361
Suite 500

---

(718) 281-4000
FAX (718) 281-4030
Steve@pdbattys.com

June 8, 2016

**Via ECF**

Hon. Edward Korman
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

                          Re:    <u>U.S. v Kenneth Landgaard et.al.</u>
                                 15-CR-552(ERK)

Dear Judge Korman:

      I represent Mr. Kenneth Landgaard who is scheduled to be sentenced by the Court on June 15, 2016. I respectfully submit this letter and attachments from my client's friends and family to support our request that Court sentence Mr. Landgaard to time served. We submit that a sentence of time served is appropriate based upon the nature of the offense, Mr. Landgaards extremely difficult family circumstances, and the acceptance of responsibility in his agreement to pay the full amount of restitution of $45,110, for which he is jointly and severally liable.

      The matter before the Court involves the laundering of funds forwarded to the defendants by an undercover FBI agent. The investigation commenced in November of 2014 and involved the transfer of money on March 18th 2014, April 20th, 2015 and a transfer that was discussed to take place on July 8th 2015, the date of Mr. Landgaard's arrest. Thereafter, a Magistrate Judge denied him bail, he waived indictment and pled guilty to 18 USC 1956(h) before the Hon John Gleeson on January 15th, 2016. Almost seven(7) months later, on January 27th 2016, Mr. Landgaard was released from custody pursuant to a $250,000 bail bond secured by his signature and that of his three brothers, one of whom is a resident of Georgia, the others from California and Minnesota. Notably all three siblings appeared in Court personally to sign the bond. Mr. Landgaard has <u>borrowed</u> the full restitution money from one of his supportive brothers.

      I have reviewed the Pre-Sentence Report (PSR) with my client. On May 26th, we filed an objection letter to the PSR based on the Department of Probation's calculation of the guidelines. The premise of the objection was twofold; the conduct about which my client accepted responsibility and for which he is prepared to accept punishment was

initiated, promulgated and exacerbated by the conduct of the Government's representatives.  Mr Landgaard had absolutely no previous contact with the criminal justice system, however he was targeted by the Government to engage in the money laundering scheme. His co-defendant was contacted by an undercover Government agent through the introduction of an informant.  Clearly the Government targeted Mr. Landgaard and his co-defendants because they thought they may be involved in the "business" of laundering funds obtained in the United States sent outside the country and then sending it back to the United States.  However, absolutely no proof information or evidence exists that Mr. Landgaard had ever done this before.  During the transactions and in conversations with the Government agents while the participants may have boasted of prior activity to hide their inexperience, the fact is that Mr. Landgaard had never engaged in conduct of this nature prior to his involvement in this Government- induced crime.  Moreover, while Mr. Landgaard appeared on the Government's radar in November of 2014 the only illegal conduct in which he engaged is the subject of this case and recounted in the PSR.  Indeed during the entire pendency of this investigation while he was under the watchful eye of the Government for over approximately eight (8) months, he engaged in no other criminal conduct other than that to which he pled guilty.  The case agents may have believed that Mr. Landgaard and his co-defendants were sophisticated money launderers who regularity engaged in this conduct but what they learned from their surveillance was that these individuals were not running a profitable business with many clients, but had a lone client the undercover agent-who initiated and conceived of the entire operation.  The notion that this was in anyway an extensive or sophisticated business is belied by the facts. The encrypted software that was used is available to everyone on Google Play–it is free and significantly less sophisticated then encryption software available on an I phone.  The off shore bank accounts were readily available from ATM machines in the Untied States. The private jet was rented only once--for the one flight involved in this case. Moreover, it took Mr. Landgaard's co-defendant a very long time---approximately eight weeks--- to deposit the money in the various accounts so it could be withdrawn from the ATMs.   My client flew into Laguardia Airport and took a taxi Islip to meet his co-conspirators and the agents who arrested him, by no means was a sophisticated means of transportation negating the notion that private aircraft was readably available to him.  This corroborates the fact that the actors in this conspiracy were just that, actors--- individuals who boasted of criminal expertise and prior transgressions where none had occurred previously.  The criminal conduct for which Mr. Landgaard accepted responsibility was isolated, limited and aberrational.

     For the reason stated above, we object to the two (2) level enhancement to the guidelines propagated by the Department of Probation in paragraph thirty six (36) of the PSR.  As stated preciously nothing in this conspiracy was sophisticated.  Additionally, we object to the base offense level of  twenty four (24) contained in paragraph thirty four (34) of the PSR which is predicated upon an incorrect valuation of the funds to be $3,200,000. The plea agreement contemplates a different but also inaccurate loss figure of $2,600,000. Both of those amounts are inflated.  The transactions initiated by the Government in which my client received the money from the undercover agent are recounted in paragraphs twelve (12) and fourteen (14) of the PSR. They involve the receipt of $400,000 in funds which were to be transported to Panama.  When it became apparent through their investigation that they were not dealing with a sophisticated operation, the Government

could have and should have ended this relationship with the defendants at this point, and arrested them. Instead they chose to up the ante for the final multi- million dollar transaction, that they knew would never be consummated, just to expose the defendants to far greater punishment than their conduct deserved by inappropriately influencing the Guideline level. This matter can be analogized to the reverse sting sceanarios discussed in USSG 2D1.1 Application Note (27)(A) and in U.S. v. Caban 173 F.2d (2nd Cir. 1999) and U.S.v. Panduro 152 F. Supp 398 (SDNY) 2001) narcotics cases where the Government's action result in the defendants exposure to a longer sentence under the guidelines. In Caban, the Court noted that "it is unsettling that in this type of reverse sting, the government has a greater than usual ability to influence a defendant's ultimate Guidelines level and sentence" supra at 93.  There the Court noted that the District Court had the ability to depart but instead granted the defendant an additional two (2) point reduction for acceptance of responsibility and noted that the Guideline level was too severe for the normal two point (2) point reduction.  Is the our position that the Department of Probation should recognize that it was the Government's activity that resulted in the defendants significantly increased exposure to a period of incarceration and that Mr. Landgaard should only be held responsible for that initial $400,000.  We are not arguing that Mr. Landgaard was wholly entrapped or that he did not commit a crime but that the Government should not select a time and circumstance to conclude an investigation for the sole purpose of increasing his potential punishment particularly when there is no other evidence of any other criminal wrong doing. If the court accepts the valuation of $400,000 it would reduce his adjusted offense level 4 levels resulting in an adjusted offense level of 18 with a corresponding sentence of 27 to 33 months, pursuant to USSG 2B1.1(b)(1)(G).

The guidelines are only one factor to consider in determining the appropriate sentence. 18 USC 3553(a) require consideration of other factors stating in part:

- a) Factors to be considered in imposing a sentence --The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
  - (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
  - (2) the need for the sentence imposed;
    - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    - (B) to afford adequate deterrence to criminal conduct;
    - C) to protect the public from further crimes of the defendant; and
    - (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
  - (3) the kinds of sentences available;
  - (4) the kinds of sentence and the sentencing range established for-.
    - (A) the applicable category of offense committed by the applicable category as set forth in the guidelines issued by the Sentencing Commission. . . ."

      We ask the Court to examine "the history and characteristics" of Mr. Landgaard.  He has no criminal history.  Mr. Landgaard presents no danger to the public and has the ability to fully rehabilitate himself, maintain future employment and contribute to his community.  He was employed performing various jobs sometimes working at several different businesses at the same time.  Mr. Landgaard had been very successful for a time-- from 2007 thru 2012, he worked at Tranen Capital which dealt with investment opportunities in Japan. Unfortunately due to a change in Japanese business regulations Tranen was forced to close.  He was also involved in Hawker Wellworks, a  supplier of equipment to the oil industry.  In 2015, he sold his interest in that company, but his expected payout has been delayed due to the downturn in oil prices.  It was Landgaard's original intention to use the proceeds from that sale to make the full restitution. His financial distress has been compounded by his need to provide support to his family in crisis.  As stated in the PSR Mr. Landgaards wife, Trisha,  suffers from mental illness exacerbated by several debilitating physical maladies and chronic pain.  A symptom of her severe endometriosis is poor circulation which results in swollen limbs and loss of mobility.   She now suffers from severe depression and  refuses to meet with any members of the family and has become a recluse. She lives with Mr. Landgaards fourteen (14) year old son, who is now her ONLY caretaker.  The boy cannot attend school and the only education he is receiving is through home school courses on the internet.  This situation has continued to worsen, and it is Mr. Landgaard's intention to do everything in his power to put his family back together when his travel restrictions are removed. This is evidenced by the PSR itself and the annexed letters.  We ask the Court to consider this extraordinary family circumstances that mitigates against additional incarceration.  Mr. Landgaard's prolonged absence only exacerbates this extremely difficult family circumstance and does not further society's goals, at all.

      Mr. Landgaard agreed to remit the full restitution figure due the Government.  He does not personally have the funds to do so, as described above due to the downturn of oil prices.  However, he is borrowing the money from one his brothers, who is confident that he will be repaid in full.  He wishes demonstrate his remorse and sense of duty by alleviating the burden on his co-defendants.  We ask the Court to consider this unequivocal acceptance of responsibility when determining an appropriate and proportionate sentence.  This payment and his having pled guilty to an infomration saving the Government the time and effort of not just preparing for trial but having to present this matter to a Grand Jury is evidence of this.

      Mr. Landgaard is a first time offender with a lengthy work history.  Unexpectedly, he fell on hard times. He sold his home and moved to a mobile home. He is optimistic that he will be able to support his family financially and emotionally.  He is currently involved in a new business partnering with one of his brothers involving developing software for the fishing industry.  He expects that this new venture will provide the funds to support his family.  He has learned a very hard lesson --he has spent seven (7) months in jail in New York completely isolated from his family that desperately need him.  He has a complete understanding of the harsh penalties for criminal conduct. He does not blame the Government for its role as he knows he should have walked away instead of engaging in the conduct.  The letters submitted clearly demonstrate that these actions were out of character and completely aberrational.  The chances of recidivism are non existent and incarceration will further exacerbate his family crisis without serving society's legitimate

goals of restitution, reparation or deterrence.  It will however, disproportionately punish him for his conduct. We respectfully ask the Court to sentence below the guidelines and consider sentencing him to time served.

We thank the Court for considering this application.

Respectfully submitted;

/s/

**STEVEN L. BROUNSTEIN**